Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALKESH AMODWALA,<br><br>     Plaintiff,<br><br>     v.<br><br>VEONEER, INC., JAN CARLSON, ROBERT W. ALSPAUGH, MARY LOUISE CUMMINGS, MARK DURCAN, JAMES M. RINGLER, KAZUHIKO SAKAMOTO, JONAS SYNNERGREN, and WOLFGANG ZIEBART,<br><br>     Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Alkesh Amodwala ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against Veoneer, Inc. ("Veoneer" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Veoneer by Magna International Inc. ("Magna").

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5.    In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.    Plaintiff is, and has been at all relevant times hereto, an owner of Veoneer common stock.

7.    Defendant Veoneer engages in the design, development, manufacture, and sale of automotive safety electronics primarily in North America, Europe, and Asia. The Company is

incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "VNE."

8.     Defendant Jan Carlson ("Carlson") is President, Chief Executive Officer, and Chairman of the Board of the Company.

9.     Defendant Robert W. Alspaugh ("Alspaugh") is a director of the Company.

10.    Defendant Mary Louise Cummings ("Cummings") is a director of the Company.

11.    Defendant Mark Durcan ("Durcan") is a director of the Company.

12.    Defendant James M. Ringler ("Ringler") is a director of the Company.

13.    Defendant Kazuhiko Sakamoto ("Sakamoto") is a director of the Company.

14.    Defendant Jonas Synnergren ("Synnergren") is a director of the Company.

15.    Defendant Wolfgang Ziebart ("Ziebart") is a director of the Company.

16.    Defendants Carlson, Alspaugh, Cummings, Durcan, Ringler, Sakamoto, Synnergren, and Ziebart are collectively referred to herein as the "Individual Defendants."

17.    Defendants Veoneer and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

18.    On July 22, 2021, Veoneer and Magna announced that they had entered into a definitive merger agreement under which Magna would acquire all of the issued and outstanding shares of Veoneer for $31.25 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**Magna to Acquire Veoneer, Positioning Magna's ADAS Business as a Global Leader in a Fast-Growing Industry**

July 22, 2021 20:10 ET | Source: Magna International Inc.; Veoneer, Inc.

- Veoneer's complementary products and capabilities strengthen and broaden Magna's ADAS portfolio and industry position
- Transaction adds significant engineering and software expertise, including in sensor perception and drive policy software
- Enhances Magna's ADAS systems capabilities and feature functionality

AURORA, Ontario and STOCKHOLM, Sweden, July 22, 2021 (GLOBE NEWSWIRE) -- Magna International Inc. (TSX: MG; NYSE: MGA) and Veoneer (NYSE: VNE; SSE: VNE SDB) today announced that they have entered into a definitive merger agreement under which Magna will acquire Veoneer, a leader in automotive safety technology. Pursuant to the agreement, Magna will acquire all of the issued and outstanding shares of Veoneer for $31.25 per share in cash, representing an equity value of $3.8 billion, and an enterprise value of $3.3 billion, inclusive of Veoneer's cash, net of debt and other debt-like items as of March 31, 2021.

\*     \*     \*

Following the closing of the transaction, Veoneer will be combined with Magna's existing ADAS business and integrated into Magna's electronics operating unit. The combined business will build upon relationships with both organizations' automotive customers, suppliers and technology partners to develop best-in-class products.

\*     \*     \*

## TRANSACTION DETAILS AND TIMING

The transaction has been unanimously approved by the Veoneer and Magna boards of directors, and Veoneer's board of directors unanimously recommends that Veoneer stockholders approve the proposed merger and merger agreement. In addition, Veoneer stockholders AMF, Cevian, AP4 and Alecta, which collectively represent approximately 40% of Veoneer's outstanding shares of common stock, have either entered into support agreements with Magna or provided indications of support, pursuant to which they have agreed, among other things and subject to certain conditions, to vote their shares of Veoneer common stock in favor of the transaction. A special meeting of Veoneer's stockholders will be convened in connection with the transaction as soon as practicable after the mailing to Veoneer's stockholders of the proxy statement in connection with the merger. The transaction is expected to close near the end of 2021, subject to the approval of Veoneer's stockholders, certain regulatory approvals and other customary closing conditions. The transaction is not subject to any financing conditions.

4

Citi serves as financial advisor and Sidley Austin LLP serves as legal counsel to Magna. Rothschild & Co and Morgan Stanley serve as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP serves as legal counsel to Veoneer.

\*     \*     \*

**ABOUT MAGNA**

Magna is more than one of the world's largest suppliers in the automotive space. We are a mobility technology company with a global, entrepreneurial-minded team of 158,000 employees and an organizational structure designed to innovate like a startup. With 60+ years of expertise, and a systems approach to design, engineering and manufacturing that touches nearly every aspect of the vehicle, we are positioned to support advancing mobility in a transforming industry. Our global network includes 347 manufacturing operations and 84 product development, engineering and sales centres spanning 28 countries.

\*     \*     \*

**ABOUT VEONEER**

Veoneer, Inc. is a worldwide leader in automotive technology. Our purpose is to create trust in mobility. We design, develop, and manufacture state-of-the-art software, hardware and systems for occupant protection, advanced driving assistance systems, and collaborative and automated driving to OEMs globally. Headquartered in Stockholm, Sweden, Veoneer has 7,500 employees in 11 countries. In 2020, sales amounted to $1.37 billion. The Company is building on a heritage of close to 70 years of automotive safety development. In 2018, Veoneer became an independent, publicly traded company listed on the New York Stock Exchange (NYSE: VNE) and on the Nasdaq Stockholm (SSE: VNE SDB).

19.     On August 19, 2021, the Company filed a Schedule 14A Preliminary Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

20.     The Proxy Statement, which recommends that Veoneer shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Veoneer's financial projections; (ii) the financial analyses performed by Veoneer's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and Rothschild & Co US Inc.

("Rothschild"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving Morgan Stanley.

21.    The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board and Reasons for the Merger; (ii) Opinions of Veoneer's Financial Advisors; and (iii) Projections Provided by Veoneer's Management.

22.    Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Veoneer shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.    Material Omissions Concerning Veoneer's Financial Projections**

23.    The Proxy Statement omits material information concerning Veoneer's financial projections.

24.    With respect to the "Company Projections," the Proxy Statement fails to disclose: (1) all line items underlying (i) Gross Profit, (ii) Operating Income, (iii) EBITDA, and (iv) Unlevered Free Cash Flow; (2) Veoneer's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

25.    The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors,

the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

26.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

27.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.  Material Omissions Concerning the Financial Advisors' Analyses**

28.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Morgan Stanley and Rothschild.

29.     The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley and Rothschild in rendering their purported fairness opinions must be fairly

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Aug. 30, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

disclosed to Veoneer shareholders. The description of Morgan Stanley's and Rothschild's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, Veoneer shareholders are unable to fully understand Morgan Stanley's and Rothschild's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

   **A.  *Morgan Stanley's Analyses***

   30.   With respect to Morgan Stanley's "*Public Trading Comparables Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company Morgan Stanley observed in its analysis.

   31.   The Proxy Statement fails to disclose the following concerning Morgan Stanley's "*Discounted Cash Flow Analysi*s": (1) all line items underlying the Company's unlevered free cash flow projections; (2) the terminal values of the Company; (3) the individual inputs and assumptions underlying the (i) discount rate ranging 10.3% to 11.8%, and (ii) perpetuity growth rates of 1.5% to 2.5%; (4) total debt including financial leases, plus tax-effected pension liability, less cash and cash equivalent and investments in associates; and (5) the outstanding shares of Veoneer common stock on a fully diluted basis.

   32.   The Proxy Statement fails to disclose the following concerning Morgan Stanley's "*Equity Research Analysts' Future Price Targets*" analysis: (1) the individual price targets observed by Morgan Stanley in its analysis; and (2) the sources thereof.

   **B.  *Rothschild's Analyses***

   33.   With respect to Rothschild's "*Selected Public Company Analysis*" and "*Selected*

8

*Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual financial metrics of each company and transaction Rothschild observed in its analyses.

34.     The Proxy Statement fails to disclose the following concerning Rothschild's "*Discounted Cash Flow Analysi*s": (1) all line items underlying the Company's unlevered free cash flow projections; (2) the terminal values for the Company; (3) the individual inputs and assumptions underlying the (i) range of growth rates in perpetuity of 1.5% to 2.5%, and (ii) range of illustrative discount rates of 10.5% to 12.5%; (4) Veoneer's net debt as of June 30, 2021; and (5) the number of fully diluted outstanding shares of Veoneer common stock.

35.     The Proxy Statement fails to disclose the following concerning Rothschild's analysis of selected equity analyst price targets for Veoneer common stock: (1) the individual price targets observed by Rothschild in its analysis; and (2) the sources thereof.

36.     With respect to Rothschild's analysis of premiums paid in selected precedent transactions, the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

### 3.     Material Omissions Concerning Potential Conflicts of Interest Involving Morgan Stanley

37.     The Proxy Statement omits material information concerning potential conflicts of interest involving Morgan Stanley.

38.     The Proxy Statement fails to disclose the timing and nature of the past services Morgan Stanley and/or its affiliates provided Magna and/or its affiliates, including the amount of compensation Morgan Stanley received or expects to receive for providing each service.

39.     The Proxy Statement also fails to disclose the timing and nature of the past services Morgan Stanley and/or its affiliates provided Veoneer and/or its affiliates.

40.     Disclosure of a financial advisor's compensation and potential conflicts of interest

to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

41.     The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

<u>**COUNT I**</u>
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
<u>**Against All Defendants**</u>

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

44.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

45.     The false and misleading statements and omissions in the Proxy Statement are

material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

46.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

48.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the

Company which were or had become materially false or misleading.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

52.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 30, 2021                            Respectfully submitted,

                                                  **HALPER SADEH LLP**

                                                  By: /s/ Daniel Sadeh_____
                                                  Daniel Sadeh, Esq.
                                                  Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                  667 Madison Avenue, 5th Floor
                                                  New York, NY 10065
                                                  Telephone: (212) 763-0060
                                                  Facsimile: (646) 776-2600
                                                  Email: sadeh@halpersadeh.com
                                                          zhalper@halpersadeh.com

                                                  *Counsel for Plaintiff*